IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| TROY McCULLEY | § | |
| v. | § | CIVIL ACTION NO. 5:18cv108 |
| JAMES McCORMICK, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Troy McCulley, a former inmate of the Bowie County Correctional Center proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The Defendants remaining in the case are named Defendants are former Warden James McCormick, Officer Kody Bartlett, and Director of the Arkansas Department of Corrections Wendy Kelly.

**I. The Plaintiff's Original and Amended Complaints**

In his original complaint, Plaintiff stated on May 5, 2018, he was assaulted by an inmate named Kenneth White for no reason. White was armed with a lock in a glove. Plaintiff stated he was hit twice in the face and was unconscious for ten minutes, during which time he was hit with fist and feet in the head, upper chest, and arms. The security officers stood outside the cell watching and did not try to come to his aid for some ten minutes after the assault. Plaintiff argued that Warden McCormick is responsible for the actions of his security staff and Director Kelly is responsible for placing White in the correctional center and in the cell with Plaintiff.

Plaintiff attached a Step One grievance in which he complained about the incident and said that guards told him they knew White was crazy and violent and should not have been in general population. The response to this grievance stated that the barracks are approved by the Arkansas

1

Department of Corrections and we [apparently meaning Bowie County] have no control over them. Plaintiff then filed a Step Two grievance appeal, and Warden McCormick responded that White had served his time in segregation and that Plaintiff has no authority to tell the supervisors where to house inmates or when to transfer them. The supervisors have been alerted to pay close attention so there are no other incidents between Plaintiff and White.

Plaintiff filed a Step Three grievance appeal complaining that as of May 15, White was already back in general population. He stated that he was not trying to tell anyone what to do, he was just trying to let them know that where they put White still leaves Plaintiff in danger. He also stated that he has not been able to get any information on the charges which were supposed to be put on White. The response to this appeal, signed by ADC supervisor Dexter Payne, concurred with Warden McCormick's response.

Plaintiff also attaches a statement saying "this is a case of retaliation by the State of Arkansas in order to try and stop me from being able to file my federal habeas corpus on time." He again says that guards told him White was unstable and should not have been placed in general population. Plaintiff complained when a fight is called in, the guards stand outside the cell and watch, but do not try to help. (Docket no. 1-1, p. 7).

At the time of the incident, Plaintiff stated he was standing on his locker box at the foot of his bed eating a bowl of beans when White approached and said he wanted Plaintiff to put his bowl down because he was tired of the way Plaintiff has been insulting him, which Plaintiff stated was a lie. White then hit Plaintiff in the face twice with a lock in a glove and took Plaintiff's bowl away. Plaintiff was dazed and stepped down from his locker box, and White grabbed him and pulled him backwards. Plaintiff stated he fell on his back and was unconscious before he hit the floor. White then stood over him and hit him in the head and upper chest.

Plaintiff stated he was unconscious for ten minutes, lying in a pool of blood. The security guard was standing where he could see everything and called in the assault, but then claimed he did not see it. Other guards came but only watched and did not stop anything. They stood outside the

cell and no one called the medical department for about seven minutes. Only after Plaintiff regained consciousness some ten minutes later did anyone try to help him. Everyone was told to stay away from him and he was taken to the medical department. He was then taken to the hospital. Plaintiff complained White was only placed in segregation for ten days, and then was placed in cell B-6, next to Plaintiff's cell B-7. Plaintiff stated this made it to where he could not move around the jail and continue to get medical care while staying away from White. (Docket no. 1-1, pp. 8-9).

An affidavit from inmate August Kreiner [written in Plaintiff's handwriting] states on May 5, 2018, he saw Plaintiff fall and land on his back, and White stood over Plaintiff and hit him in the face six times. Plaintiff did not react, so Kreiner told White that was enough and White stopped. There was a lot of blood on the floor from where Plaintiff had been laying for around ten minutes and he appeared to be unconscious when the attack was over. (Docket no. 1-1, p. 10).

An affidavit from inmate Wesley Holland states he was sitting on his box when he heard scuffling from two other inmates. When he looked up, he saw that White had got up off his rack and attacked Plaintiff. After Plaintiff was out on the floor, White went back and sat down as though nothing had happened. The guard at the door said that he did not see any of it take place. Plaintiff lay on the floor for about ten minutes. A number of guards gathered at the door looking into the barracks, and finally came in and took White out in handcuffs. The medical staff came in and took Plaintiff to the infirmary.

A statement from inmate Clark Davis says he saw White pull Plaintiff by his shoulder and Plaintiff hit his head on the concrete. White then hit Plaintiff in the face five or six times. The officer came to the door and asked what was going on, and White said nothing, everything was all right. Plaintiff was still laying on the floor with blood behind his head. The lieutenant came in and asked who did it, and an inmate named Poe told the lieutenant about White's hitting Plaintiff and cutting up the trash can with a box blade. The guard said he did not know what had happened, but he had been standing right where he watched everything. After about seven minutes, the lieutenant

called the medical department. Plaintiff lay on the floor for about ten minutes before regaining consciousness. (Docket no. 1-1, p. 12).

A statement by inmate Bobby Poe said that he was laying on his bunk when he saw Plaintiff getting ready to climb into his bunk after cleaning his bowl. White came over and hit Plaintiff in the head, knocking him out. White then held Plaintiff by the hair and hit him in the face several times. Plaintiff dropped to the floor and White grabbed his head and banged it into the concrete several times. White then stood over Plaintiff and stomped him in the head. The officer at the door stood up and White ran back to his bunk and said "everything was cool." The officer did not catch White and said that he did not see anything at all. (Docket no. 1-1, p. 13).

A document from Wadley Regional Medical Center entitled "Emergency Documentation" says Plaintiff was seen on May 5, 2018, at 10:10 p.m. The "history of present illness" portion stated Plaintiff is a prisoner from Arkansas being held in a Texarkana facility due to overpopulation. The history says Plaintiff stated he was assaulted by "multiple other inmates" and was hit with fists and feet in the head, upper chest, and back. He denied loss of consciousness but says he felt dazed, and complained of left eye disturbance, headache, dizziness, and facial pain. A CT exam showed soft tissue swelling over the bilateral orbits without a fracture, a bilateral mucous retention cyst in the sinuses, and degenerative changes in the cervical spine but no acute fracture. Other injuries noted included a facial contusion, paraorbital ecchymosis (bruising around the eyes), a forehead contusion, a superficial laceration of the lower lip, and contusions and abrasions on the anterior chest wall and upper back; however, there were no signs of facial or head trauma or basilar skull fracture, no signs of an injury to the neck, his lungs were clear, and his cardiovascular system was normal. There was a reported laceration on the scalp but it could not be found.

In his first amended complaint (docket no. 12), Plaintiff contended Warden McCormick made it a policy for his guards to routinely fail to act when prisoners fight. He complained Wendy Kelly acted with deliberate indifference by placing White in the cell with Plaintiff. Plaintiff stated

he removed White as a defendant in his original complaint because he was told that White had hung himself after being released.

Plaintiff subsequently filed a second amended complaint (docket no. 21) adding an unknown correctional officer as a defendant. He stated this officer was posted at Station 8 and saw the assault, but just stood outside the cell watching and did not come to Plaintiff's aid or stop the assault. On February 2, 2021, the case was administratively closed until this officer could be identified. The officer was subsequently identified as Kody Bartlett and he was ordered to answer the lawsuit.

Warden McCormick and Officer Bartlett have filed substantive motions for summary judgment (docket no.'s 47, 75). Plaintiff has filed responses to each of the motions. Director Kelly has not been served and has not appeared in the case.

**II. The Motions for Summary Judgment**

A. Warden McCormick

In his motion for summary judgment, Warden McCormick says Plaintiff spent more than half of his time at the Bowie County Correctional Center in administrative segregation because he had trouble getting along with other inmates, including getting into fights with several other inmates. On May 5, 2018, Plaintiff was housed in Pod B07, a general population assignment, and White was in Pod B06. Warden McCormick describes this as "a different cell but the same pod as Plaintiff."

On the evening of May 5, 2018, Warden McCormick says Plaintiff was injured, but LaSalle Corrections, which operated the Bowie County Correctional Center, does not have any record of any guard witnessing the attack. He stated Bowie County officials were not aware of any prior attacks or threats by White, and the report of an assault on May 5, 2018 was the first allegation or evidence of any assault on or injury to Plaintiff by White. Nor was there any evidence that White had assaulted other inmates.

According to Warden McCormick, when a physical altercation occurs between inmates, a correctional officer is not required by policy to immediately physically intervene. Rather, policy requires that the officer evaluate the situation to determine whether he can safely intercede. If the

officer concludes that he cannot safely do so, then backup is requested and the officers intercede when they can do so safely. Thus, Warden McCormick says simply alleging that a correctional officer saw the fight but did not immediately intervene does not state any policy violation.

In his response to Warden McCormick's motion, Plaintiff states "the evidence establishes that the Defendant McCormick actually knew of a substantial risk of serious harm to McCulley's health and safety and all the other inmates and staff, then Defendant failed to respond reasonably." He says part of the warden's job is to review the files of all the inmates placed in his custody and points to a document he attached to his original complaint, purporting to show White's history. According to this document, which is in Plaintiff's handwriting, White was charged with second-degree battery, probation revocation, aggravated assault, and first-degree terroristic threat. White also purportedly had major disciplinary violations including interfering with operations, promoting or agitating a fight, refusing an assignment, battery, and threats to inflict injury. The document asserts that White's risk score level had been changed on April 24, 2018, to "maximum."

Plaintiff points to his witness statements saying that the guard saw everything but would not admit it, and a group of guards gathered outside looking in for ten minutes before they entered. He claims one guard said they knew White was "crazy and dangerous" and should not have been in general population.

According to Plaintiff, cameras show the guard (presumably Bartlett) stand up to get a better view and call for backup at the same time. He claims the cameras also show what White is doing to Plaintiff, and a third camera shows how a group of guards ran up to "watch the show."[1] When everything is over, the guard claimed he did not see anything even though he did. Plaintiff says that the guard was "big enough that he could have stopped White by himself," but that he finished his shift and "was never seen again."

---

[1] Plaintiff does not state that he has viewed any video nor otherwise show how he knows what the cameras showed.

Plaintiff argues if Warden McCormick had done his job, White would have been placed in segregation and never released to general population upon his arrival, and arrangements should have been made to send White back to the Arkansas Department of Corrections. Along those lines, Plaintiff asserts Director Kelly should have had a policy in place to stop inmates as dangerous as White from being sent to Bowie County.

Finally, Plaintiff asserts the claims made about him are untrue. He says he did not spend any time in segregation and he had no trouble getting along with other inmates, and did not get into any fights with other inmates. He again says on May 5, 2018, he and White were in general population.

B. Officer Bartlett

Officer Kody Bartlett's motion for summary judgment states he observed "some portion" of an assault on Plaintiff, but he was trained not to enter the pod in such a situation until he had adequate assistance to safely enter the pod. He believed he could not safely intercede in the assault alone. When two other correctional officers arrived, he went into the pod with the officers to stop the assault. Officer Bartlett stated that "less than a couple of minutes passed" from his first observing the assault to entering the pod. As soon as White was secured, Officer Bartlett stated Plaintiff was taken to the medical department.

Officer Bartlett denied delaying his entry into the pod in order to prolong the assault and stated he was not aware of any prior assault by White upon Plaintiff or any other inmate. He was not aware of any specific risk to Plaintiff from White.

In his response, Plaintiff states the evidence establishes that all of the Defendants were deliberately indifferent. He points to his response to Warden McCormick's motion and says he sees no competent summary judgment evidence included with Officer Bartlett's motion, although affidavits from both Officer Bartlett and Warden McCormick are attached to that motion. He claims he has shown that material facts are disputed and the Defendants are not entitled to summary judgment.

**III. Discussion**

A. Warden James McCormick and Director Wendy Kelly

Plaintiff first alleges Warden McCormick and Arkansas Department of Corrections Director Kelly were deliberately indifferent to his safety by placing White in general population near him. The Fifth Circuit has held that correctional officials have a duty to protect prisoners from violence at the hands of other prisoners, but these officials may be held liable under the Eighth Amendment only if they have a sufficiently culpable state of mind, which is one of deliberate indifference to inmate health or safety. Torres v. Livingston, 972 F.3d 660, 662 (5th Cir. 2019). The court went on to explain that deliberate indifference is "an extremely high standard to meet, and a correctional official displays deliberate indifference only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it; however, deliberate indifference cannot be inferred by a negligent or even grossly negligent response to a substantial risk of serious harm." Id. Not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety; a showing that a prison official should have known of a danger but did not is not sufficient to demonstrate deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 611 (1994). As Justice Thomas explained, prisons are necessarily dangerous places, housing society's most antisocial and violent people in close proximity with one another; thus, some level of brutality and aggression among prisoners is inevitable, unless all prisoners are locked in their cells 24 hours a day and sedated. Id. at 858-59 (Thomas, J., concurring) (citation omitted).

Plaintiff does not dispute the summary judgment evidence showing that Bowie County officials were not aware of any prior attacks or threats by White upon Plaintiff, nor was there any evidence that White had assaulted other inmates. Instead, Plaintiff relies on White's purported criminal and disciplinary history, but this by itself is not enough to place prison officials on notice of a threat posed by White to Plaintiff. See Williams v. Banks, 956 F.3d 808, 812 n. 13 (5th Cir. 2020) (noting that "an inmate's history of violence alone is insufficient to impute to prison officials

subjective knowledge of the inmate's danger to harm other inmates," and "the mere fact that the offending co-inmate may have been involved in one or more prior inmate-on-inmate confrontations does not compel a finding that the determination to house the two inmates in a two-person cell amounted to deliberate indifference") [citations omitted]. Thus, even assuming White had convictions for violent offenses and a history of disciplinary action, this did not place Warden McCormick or Director Kelly that White posed a danger to Plaintiff.[2]

Supervisors such as Warden McCormick and Director Kelly may be held liable if they affirmatively participate in the acts causing a constitutional deprivation or implement unconstitutional policies causally resulting in the constitutional injury. Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). In order to satisfy the cause in fact requirement, the plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue or that his injuries resulted from the execution of the policy or custom; the description of the policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts. Spiller v. City of Texas City, Texas Police Department, 130 F.3d 162, 167 (5th Cir. 1997). The mere fact of being a supervisor is not sufficient for §1983 liability because supervisors are not liable for the actions of subordinates under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987); Sterns v. Epps, 464 F.App'x 388, 2012 U.S. App. LEXIS 5678, 2012 WL 911889 (5th Cir., March 19, 2012). Government officials may not be held liable merely because they had knowledge of or acquiesced in a subordinate's misconduct; instead, each government official, his or her title notwithstanding, is only liable for his or her own misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In this case, Plaintiff complains Warden McCormick "is responsible for the policy of guards not to enter the cell until the assault is over." Warden McCormick largely confirms this, stating in his affidavit as follows:

---

[2] Court records show Plaintiff is also serving a sentence for a crime of violence.

> When such a physical altercation occurs between inmates, a correctional officer is not required by policy to immediately physically intervene. Rather, policy provides that the corrections officer must evaluate the situation to determine whether they can safely intercede. If they conclude that they cannot safely do so, then backup is requested and they intercede once they can do so safely. Therefore, simply stating that a corrections officer saw the fight but did not immediately stop the fight or protect the inmate does not state a violation of any policy at BCCC.

(Docket no. 47-1, p. 3).

The Fifth Circuit has stated that "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006); *see also* Arenas v. Calhoun, 922 F.3d 616, 621 (5th Cir. 2019) (where entering a dormitory alone could have jeopardized the officer's personal safety, the officer was not deliberately indifferent in refusing to do so); Carrothers v. Kelly, 312 F.App'x 600, 2009 U.S. App. LEXIS 4613, 2009 WL 464445 (5th Cir., February 23, 2009). The Bowie County policy, as stated by Warden McCormick, thus was not unconstitutional. Because Plaintiff has not shown that Warden McCormick was personally involved in a constitutional violation or that the warden implemented an unconstitutional policy, his claim against Warden McCormick is without merit.

In his second amended complaint, Plaintiff asserts that Arkansas Department of Corrections Director Wendy Kelly "is responsible for placing a dangerous, unstable inmate in general population." He explains that Director Kelly is "responsible for the overall operations of each institution under her jurisdiction, including A.D.C. inmates in the Bowie County Correctional Center." (Docket no. 21, pp. 3-4). His first amended complaint asserts Director Kelly "placed me in a situation that exposed me to serious physical harm" by "placing Mr. White in a cell with Mr. McCulley," which he says without elaboration amounted to deliberate indifference. Plaintiff's original complaint asserts Director Kelly "failed to protect, placed dangerous, unstable inmate in minimum security general population" and "is responsible for placing Mr. White in this correctional center and in this cell with Mr. McCulley."

10

These conclusory allegations are insufficient to show that Director Kelly was personally involved in a constitutional deprivation or that she implemented an unconstitutional policy which was the moving force behind a constitutional deprivation. Spiller, 130 F.3d at 167; Rivera v. Salazar, 166 F.App'x 704, 2005 U.S. App. LEXIS 29186, 2005 WL 3588443 (5th Cir. December 30, 2005), *citing* Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002). Plaintiff offers nothing to suggest Director Kelly had personal knowledge of Plaintiff's or White's cell assignments in the Bowie County Correctional Center, nor does he point to any unconstitutional policies implemented by Director Kelly which resulted in a constitutional deprivation. The mere fact that Director Kelly was Director of the Arkansas Department of Corrections does not itself make her liable.

Plaintiff also asserts that the incident was the result of "retaliation" and was an attempt by the State of Arkansas to prevent him from seeking habeas corpus relief concerning his conviction. This allegation is entirely conclusory and speculative, and as such cannot sustain a claim against Director Kelly. Sanchez v. Allen, 611 F.App'x 792, 2015 U.S. App. LEXIS 6751, 1843542 (5th Cir., April 23, 2015) (conclusory and speculative allegations of retaliation do not give rise to an inference of retaliatory intent), *citing* Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Ibenyenwa v. Wells, slip op. no. 21-40241, 2022 U.S. App. LEXIS 3663, 2022 WL 413941 (5th Cir., February 10, 2022) (conclusional assertions are inadequate to state a claim of retaliation).

While Director Kelly was not served in this lawsuit and has not filed a motion for summary judgment, the Court may screen the claims against her under 28 U.S.C. §1915A(b)(1), which provides that the court may dismiss a complaint or any portion thereof which is frivolous, malicious, or fails to state a claim upon which relief may be granted. A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts that, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. Montoya v. FedEx Ground Packaging System Inc., 614 F.3d 145, 149 (5th Cir. 2010), *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable

11

inference that the defendant is liable for the misconduct alleged. Hershey v. Energy Transfer Partners, L.P., 610 F.3d 239, 245 (5th Cir. 2010); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). This plausibility standard is not akin to a probability requirement, but asks for more than a possibility that the defendant has acted unlawfully. Twombly, 550 U.S. at 556.

Detailed factual allegations are not required, but the claim must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 677-78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Id. at 678.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010), *citing* Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios, 444 F.3d at 421.

The Fifth Circuit has explained that while *pro se* complaints are construed liberally, the court is still bound by the allegations of the complaint and is not free to speculate that the plaintiff "might" be able to state a claim if given yet another opportunity to amend the complaint. Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). The court explained as follows:

> For example, if an IFP plaintiff, in amending his complaint through a response to a questionnaire, alleges in his response that he received inadequate medical care while incarcerated, we should not reverse the dismissal of the complaint on the basis that the plaintiff could possibly add facts that would demonstrate that he was treated with deliberate indifference in the medical care that he received. As another example, if an IFP prisoner asserts in the questionnaire response that he has been denied recreation time, we should not reverse dismissal on the ground that he might also be able to assert a claim that the denial was in retaliation for his having filed a grievance.

*Id*. at 97.

Despite amending his complaint twice, Plaintiff's claims against Director Kelly do not allege sufficient facts which, taken as true, state claims which are plausible on their face. As such, Plaintiff has failed to state a claim upon which relief may be granted against Director Kelly.

B. Officer Barnett

Plaintiff complains inmate White assaulted him with a weapon - a lock in a glove - and Officer Barnett did not immediately intervene. As noted above, Officer Barnett was not constitutionally required to endanger himself by entering the pod alone to confront an armed inmate engaging in violence. Longoria, 473 F.3d at 594. The summary judgment evidence, including the statements of Plaintiff and the other inmate witnesses as well as Officer Barnett's affidavit, shows that Officer Barnett did not come into the pod by himself, but that after backup arrived, the officers contacted the medical department and entered the pod within minutes after the incident occurred. Plaintiff was taken to the hospital that same night. When viewed in the light most favorable to the Plaintiff, the summary judgment evidence cannot sustain a conclusion that Officer Barnett was deliberately indifferent to Plaintiff's safety. Id.; Farmer, 511 U.S. at 838. Plaintiff's claims against Officer Barnett are without merit.

C. Qualified Immunity

In their answers to the lawsuit, Warden McCormick and Officer Barnett invoke the defense of qualified immunity. The Fifth Circuit has explained as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).
>
> Our qualified immunity inquiry is two-pronged. Garcia v. Blevins, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.' Id. We can analyze the prongs in either order or resolve the case on a single prong. Id.

After stating that a right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that the defendant's conduct violated that right, and that there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that the conduct is definitively unlawful, the Fifth Circuit explained as follows:

> When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See* Bryant v. Gillem, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her [i.e. the plaintiff's] favor, satisfying both qualified immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See* Id.

Cunningham v. Castloo, 983 F.3d 185, 190-91 (5th Cir. 2020).

Rebutting qualified immunity thus requires a showing that all reasonable officials, similarly situated, would have known the defendants' acts violated the Constitution. Tamez v. Matheny, 589 F.3d 764, 770 n.2 (5th Cir. 2009); Thompson v. Upshur County, 245 F.3d 447, 460 (5th Cir. 2001). Even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. Jones v. Collins, 132 F.3d 1048, 1052 (5th Cir. 1998). Conclusory allegations are insufficient to overcome the qualified immunity defense. Williams-Boldware v. Denton County, Texas, 741 F.3d 635, 643-44 (5th Cir. 2014).

Plaintiff has failed to meet his burden of showing that Warden McCormick or Officer Bartlett violated a clearly established constitutional right or that all reasonable officials, similarly situated, would know that Warden McCormick or Officer Bartlett's conduct violated the Constitution. As a result, Warden McCormick and Officer Bartlett are entitled to qualified immunity from the claims against them.

**IV. Conclusion**

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions

14

on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Burleson v. Texas Department of Criminal Justice, 393 F.3d 577, 589 (5th Cir. 2004). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. Id., *citing* Allen v. Rapides Parish School Board, 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. Boudreaux v. Swift Transportation Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Prison Legal News v. Livingston, 683 F.3d 201, 211 (5th Cir. 2012).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. Adams v. Traveler's Indemnity Co., 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record which supports the challenged claims and articulate the precise manner in which the evidence supports the challenged claim. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show a genuine factual issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Upon review of the pleadings and the summary judgment evidence, viewed in the light most favorable to the Plaintiff, the Court has determined that there are no genuine issues of material fact and the moving Defendants, Warden McCormick and Officer Bartlett, are entitled to judgment as a matter of law. The Court has further determined that the claims against Arkansas Department of Corrections Director Wendy Kelly fail to state a claim upon which relief should be granted. Consequently, the lawsuit should be dismissed.

## RECOMMENDATION

It is accordingly recommended that the motions for summary judgment of the Defendants Warden McCormick and Officer Bartlett (docket no.'s 47 and 75) be granted and the claims against these Defendants be dismissed with prejudice. It is further recommended that the claims against Arkansas Department of Corrections Director Kelly above-styled civil action be dismissed without prejudice for failure to state a claim upon which relief may be granted.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**SIGNED this 29th day of April, 2022.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE